21　377<br>1110　721

No. 78.—ZACHARIAH CHILDERS, and others, plaintiffs in error, *vs.* JOHN CHILDERS, defendant in error.

A bequest expressed in these words; "To my daughter Nancy Childers, I give and bequeath my negro girl Clarissa, which property I give to Nancy Childers, the wife of John Childers, of this County, and at her death to the heirs of her body, with her increase," vest an absolute title in the first taker.

Trover, in Talbot Superior Court. Tried before Judge WORRILL, at September Term, 1856.

This was an action of trover, brought by the children of Nancy Childers, deceased, late wife of John Childers, against the said John, for the recovery of a negro woman named Clarissa and her four children, Harriet, Kenah, Solomon and Simeon.

Plaintiffs proved that they were the children of Nancy Childers—the death of said Nancy—and that the slaves were in the possession of the defendant, the husband of said Nancy, and father of plaintiffs, and that he had converted said negroes to his own use.

Plaintiffs further introduced in evidence the will of John Hamock, deceased, under the eighth clause of which will, they claimed the negroes. The defendant, as the husband of

said Nancy, claimed them as his absolute property, under the same clause.

The following is the eighth clause of said will, to-wit:

"8. To my daughter Nancy Childers, I give and bequeath my negro girl Clarissa, which property I give to Nancy Childers the wife of John Childers, of this county, and at her death to the heirs of her body, with her increase."

The will was dated 24th August, 1843.

The presiding Judge charged the jury, that the eighth clause of this will created an absolute estate in John Childers, the husband, and did not vest a remainder in the plaintiffs, the children of said Nancy.

To which charge plaintiffs' counsel excepted, and thereon assign error.

The jury, under the charge of the Court, returned a verdict for the defendant.

WELLBORN; and JOHNSON & SLOAN, for plaintiffs in error.

POU & HILL, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

This clause must be interpreted as it stands, without aid from any other part of the will. The words, "at her death," used by the testator cannot vary the legal and technical meaning of the words, "heirs of her body." It is the same thing as if he had said that "I give and bequeath my negro Clarissa and her increase, to my daughter Nancy Childers, and the heirs of her body." In each case, if the will could be permitted, by the law, to take effect, the daughter, Nancy Childers, would take an estate for life in the property; in each case the heirs of her body would take a vested remainder, to take effect in possession at her death, and the property would lineally descend, as long as there were lineal descendants; and in each case, on the failure of lineal descendants the property would revert to the testator, and his

heirs at law would be entitled to it.   This would certainly be the effect, *per formam doni*, if legal effect could be given to it.   None of the cases decided by this Court, cited by the counsel for plaintiff's in error, apply to such a case.   The case of *Carlton and Carlton vs. Price* 10 *Geo.* 495, approaches it more nearly than any other.   The words used by the testator there, were, "I give and bequeath to my son Robert N. Carlton, during his natural life, and at his death to the lawfully begotten heirs of his body, the following property, &c., &c.   Nevertheless, if the said Robert N. Carlton, shall die without an heir, then, it is my desire that the above described and named negroes and their increase be set free at his death." ·

In that case there was a limitation over.   In the case before us there is no limitation over, but the stream runs on in its unobstructed course, with no limit fixed to its downward progress.   Its direction is marked out, and nothing more.   It will be remarked that in the clause in Mrs. Carlton's will, the terms, "at his death," occur twice.   If the will had stopped at the first part of the clause, where these words are first used, it would have been an analogous case to this; but the words on which the Court puts its decision, occur afterwards, and manifestly indicate a period of time at which the heirs of the body of Robert Carlton are to be looked for; because if he *dies without an heir*, says the testatrix, *then*, it is my desire that the above described and named negroes be set. free *at his death*.   The Court could not, against such an unequivocal expression of intention by the testatrix, have held that she intended to fix the property for all the future in a particular line of descent.   So much for the cases determined by this Court.

We will refer to a case or so, decided in England.   The case of *Jones vs. Morgan*, arose upon a will devising his estate to trustees to raise money to pay his debts, and after payment of the same, then to stand seized to his younger son Edward for life, without impeachment of waste, and from

and after his decease, to the use and behoof of the heirs, male, of the body of his son lawfully begotten, severally, respectively and in remainder, &c., &c., and for default of such issue, to the use of his eldest son William, for, and during the term of his natural life, (with the same limitations as in the foregoing devise to Edward.)   Edward died unmarried. A question arose as the kind of estate William took.   The Lord Chancellor in delivering his opinion said; "By all the cases, where the estate is so given, that after the limitation to the first taker, it is to go to every person who can claim as heir to the first taker; the word *heirs* must be a word of limitation."   It was insisted, in that case, that the testator meant the first estate to be an estate for life.   In regard to that, the Chancellor remarked; "I think the argument immaterial, that he, the testator, meant the first estate to be an estate for life.   I take it that in all cases, the testator does mean so; I rest it upon what he meant afterwards."   In that case it was held, that William took an estate tail.   This case was cited approvingly in the case of *Douglas vs. Congreve, 1st Beavan* 71.   That was a devise of real estate, but by our statute of 1821, if in this State a will of personalty is expressed in such terms as, by the statute *de donis condition-alibus*, would create an estate tail, if it were realty, the first taker takes a fee in the property.

It is unnecessary to put this case on our statute.   The natural, legal import of the words *heirs of the body*, is that they are words of limitation, and create an estate tail, and when the line of descent runs out, the heirs entitled to the property are to be looked for, not through the first taker, but through the grantor.   The estate reverts to his heirs.   If our statute were out of the way, there are no superadded words to warrant a different construction.   The marital rights of the husband, of course, attached.

Judgment affirmed.